IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RAYMOND E. McCANN II, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> BRYAN FULLER; Special Representative for ) <br> the ESTATE of JAMES BEDELL; MARCUS ) <br> DONKER; LONNIE PALMER; MICHAEL ) <br> SHANE CRIGER; VILLAGE OF ) <br> CONSTANTINE; ST. JOSEPH COUNTY; ) <br> STATE OF MICHIGAN; and as-yet ) <br> UNKNOWN OFFICERS OF THE ) <br> MICHIGAN STATE POLICE, ) <br> CONSTANTINE POLICE DEPARTMENT; ) <br> ) <br> *Defendants.* ) | No._____ <br><br> Judge_____ <br><br> **JURY TRIAL DEMANDED** |

# COMPLAINT

NOW COMES Plaintiff, RAYMOND E. McCANN II, by his attorneys, and complaining of Defendants, BRYAN FULLER; Special Representative for the ESTATE of JAMES BEDELL; MARCUS DONKER; LONNIE PALMER; MICHAEL SHANE CRIGER; VILLAGE OF CONSTANTINE; ST. JOSEPH COUNTY; STATE OF MICHIGAN; and as-yet UNKNOWN OFFICERS OF THE MICHIGAN STATE POLICE, CONSTANTINE POLICE DEPARTMENT and ST. JOSEPH COUNTY SHERIFF'S DEPARTMENT, states as follows:

## INTRODUCTION

1. On November 8, 2007, 11-year-old Jodi Parrack was found dead in a Constantine, Michigan cemetery. Without any physical or eyewitness evidence, law enforcement—including the Individual Defendants—wrongfully targeted Plaintiff Raymond E. McCann II as the prime suspect in Jodi's murder.

1

2. At the time of the murder, Mr. McCann was a volunteer Constantine reserve police officer. He helped search for Jodi after her mom reported her missing. For nearly seven years, law enforcement remained steadfast in its incorrect and unfounded conclusion that Mr. McCann killed Jodi. Unable to get Mr. McCann to confess to Jodi's murder, despite interrogating him for over 20 hours and turning his family and friends against him, the Individual Defendants schemed to manufacture perjury charges against him, in hopes that the undue pressure of perjury charges would break Mr. McCann's will and cause him to confess.

3. With the assistance of the other Individual Defendants, Defendant Fuller carried out his scheme to manufacture evidence against Mr. McCann, which caused Mr. McCann's imprisonment and conviction.

4. While the trumped up perjury charges did not result in Mr. McCann confessing to murder, they did break his will. Despite the fact that he faced up to five life sentences, had been detained for ten months, and that he told the truth at every opportunity, Mr. McCann accepted an offer to plead *nolo contendere* to one count of perjury and serve a minimum sentence of 20 months in prison.

5. Tragically, because the Individual Defendants spent all their energies framing Mr. McCann for the crime, Jodi's real murderer—Daniel Furlong—remained free to attempt to rape and murder another child. Shortly after Mr. McCann's plea and sentencing, Furlong attempted to strike again. This time, the potential victim escaped and led police to Furlong's door. A subsequent DNA test dispositively established that Furlong killed Jodi. Furlong made clear that he acted alone in murdering Jodi.

6. Faced with overwhelming evidence that Mr. McCann had done nothing wrong and that the Individual Defendants provided false evidence in connection with Mr. McCann's

perjury charges, on December 6, 2017, the St. Joseph County Prosecutor's Office took the extraordinary step of stipulating to vacate Mr. McCann's conviction and dismiss with prejudice all charges against him.

7. On December 7, 2017, the St. Joseph County Circuit Court entered an order vacating the conviction and dismissing the charges with prejudice.

8. On May 16, 2019, the State of Michigan stipulated to the entry of judgment against it for wrongfully imprisoning Mr. McCann. Based on that stipulation, on June 25, 2019, the Michigan Court of Claims entered judgment against the State of Michigan for Mr. McCann's wrongful imprisonment.

9. In total, Mr. McCann spent almost two years in prison for a crime he did not commit.

## JURISDICTION AND VENUE

10. This action is brought pursuant to 42 U.S.C. § 1983 and Michigan law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the United States Constitution.

11. This Court has jurisdiction for Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction for his state-law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district. In addition, Plaintiff's criminal case was investigated, tried, and appealed in this judicial district, such that a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

**PARTIES**

13. Plaintiff Raymond E. McCann II is a 52-year old resident of Marcellus, Michigan. At the time of his arrest, he was 46 years old and lived with his wife and children in Constantine, Michigan.

14. At all relevant times, Defendant Bryan Fuller was an employee of the Michigan State Police, acting under color of law and within the scope of his employment in connection with the investigation of Jodi Parrack's murder, which resulted in Mr. McCann's wrongful conviction. Mr. McCann brings this suit against Defendant Fuller in his individual capacity.

15. Defendant special representative for the Estate of James Bedell (hereinafter, "Defendant Bedell" or "Bedell"), to be subsequently appointed by the Court, is named because, upon information and belief, James Bedell is deceased. At all relevant times, Defendant Bedell was an employee of the Constantine Police Department, acting under color of law and within the scope of his employment in connection with the investigation of Jodi Parrack's murder, which resulted in Mr. McCann's wrongful conviction. Mr. McCann brings this suit against Defendant Bedell in his individual capacity.

16. At all relevant times, Defendant Marcus Donker was an employee of the Constantine Police Department, acting under color of law and within the scope of his employment in connection with the investigation of Jodi Parrack's murder, which resulted in Mr. McCann's wrongful conviction. Mr. McCann brings this suit against Defendant Donker in his individual capacity.

17. At all relevant times, Defendant Lonnie Palmer was an employee of the St. Joseph County Sheriff's Department, acting under color of law and within the scope of his employment in connection with the investigation of Jodi Parrack's murder, which resulted in Mr. McCann's

wrongful conviction. Mr. McCann brings this suit against Defendant Palmer in his individual capacity.

18. At all relevant times, Defendant Michael Shane Criger was an employee of the Michigan State Police, acting under color of law and within the scope of his employment in connection with the investigation of Jodi Parrack's murder, which resulted in Mr. McCann's wrongful conviction. Mr. McCann brings this suit against Defendant Criger in his individual capacity.

19. Defendants as-yet-unknown law enforcement officers of the Michigan State Police, Constantine Police Department, and St. Joseph County Sheriff's Department were respectively employed by the Michigan State Police, Constantine Police Department, or St. Joseph County Sheriff's Department, acting under color of law and within the scope of their employment in connection with the investigation of Jodi Parrack's murder, which resulted in Mr. McCann's wrongful conviction. Mr. McCann brings this suit against each officer described in this paragraph in his or her individual capacity.

20. Defendant Village of Constantine is a Michigan municipal corporation and is and/or was the employer of Defendants Donker and Bedell.

21. Defendant St. Joseph County is a general law county within the State of Michigan and is and/or was the employer of Defendant Palmer.

22. Defendant State of Michigan is a state within the United States of America and a necessary party to this lawsuit. Defendant State of Michigan is and/or was the employer of Defendants Fuller and Criger.

## FACTUAL BACKGROUND

*Jodi Parrack's Murder*

23. In the early evening on November 8, 2007, Daniel Furlong lured Jodi Parrack into his garage, bound her with zip ties, and sexually assaulted her. Furlong then suffocated Jodi to death with a plastic bag.

24. At around 6:00 p.m. on November 8, 2007, Furlong dumped Jodi's body at the local cemetery.

*The Search for Jodi*

**Jodi's Mother Reports Jodi Missing**

25. On November 8, 2007, Jodi's mother, Valerie Jo Gilson (also known as Valerie Joe Carver) reported Jodi missing after Jodi did not return home on time. Ms. Gilson made the report to Defendant Donker after Jodi already had been murdered and left at the cemetery.

26. Ms. Gilson also let other people in Constantine know that Jodi was missing, including Mr. McCann, whose son was friends with Jodi.

27. Mr. McCann, who was a volunteer Constantine Police Department reserve officer, offered to help search for Jodi.

**The Failure to Coordinate a Systematic Search Effort**

28. Defendant Donker failed to coordinate a proper search effort for a missing minor and failed to properly record or document his search efforts.

29. Defendant Donker did not seek the assistance of other Constantine Police Department officers or other police departments, even though he was the only full-time officer on duty and lacked the necessary training and experience to perform the requisite search and investigation.

6

30. In lieu of a proper search, Constantine residents and Defendant Donker searched for Jodi in a haphazard manner.

**The Search**

31. Defendant Donker and Mr. McCann were the only two police officers who participated in the search for Jodi.

32. In connection with their search efforts, Defendant Donker and Mr. McCann had several in-person and telephonic communications.

33. Defendant Donker kept no record of his communications and contacts with Mr. McCann.

34. As part of his search efforts, Mr. McCann searched various locations in Constantine and spoke with various Constantine residents, including Ms. Gilson.

35. During the search, Mr. McCann asked Ms. Gilson and others whether anyone had searched the local cemetery. Ms. Gilson informed Mr. McCann that she and others were planning to go there. Mr. McCann agreed to meet them at the cemetery.

*The Discovery of Jodi's Body*

36. At approximately 10:30 p.m. on November 8, 2007, Ms. Gilson discovered Jodi's dead body in the cemetery in Constantine, Michigan.

37. Mr. McCann arrived at the cemetery shortly thereafter.

*The Investigation*

**The Forensic Evidence**

38. During the investigation immediately following Jodi's death, the DNA of an unknown male was found on Jodi's body and clothes.

39. Mr. McCann's DNA did not match the DNA found on Jodi's body.

40. Nevertheless, the Individual Defendants continued to pursue Mr. McCann as Jodi's murderer, which ultimately resulted in his wrongful arrest and conviction.

41. Prior to Mr. McCann's arrest and conviction, the Individual Defendants, along with other law enforcement officers, had the opportunity to collect DNA from Furlong but failed to do so. Indeed, shortly after Jodi's murder, law enforcement officers went to Furlong's home but did not collect a DNA sample.

42. When law enforcement officers finally collected Furlong's DNA after Mr. McCann's wrongful arrest and conviction, the results revealed that Furlong's DNA was on Jodi's body and clothing.

**Law Enforcement Targets Mr. McCann**

43. Even though no physical or eyewitness evidence connected Mr. McCann to the murder and despite Mr. McCann's DNA not matching that of the DNA found on Jodi's body and clothing, at all relevant times the Individual Defendants, among others, targeted Mr. McCann as a suspect in Jodi's murder and used psychologically coercive and improper interrogation techniques in an effort to overcome Mr. McCann's will and get him to falsely confess to a crime he did not commit.

44. In total, the Individual Defendants' improper interrogations of Mr. McCann lasted for more than 22 hours.

45. In a further effort to overcome Mr. McCann's will and get him to falsely confess to a crime he did not commit, the Individual Defendants sought to turn his family, friends, and community members against him by conducting interviews that made it clear that they believed Mr. McCann was the person who killed Jodi and otherwise defaming and disparaging Mr. McCann. The Individual Defendants knew that, in Mr. McCann's small community, word would

spread that law enforcement was treating Mr. McCann as its primary suspect, which would add additional pressure to Mr. McCann to confess.

46. At all times, Mr. McCann truthfully denied any involvement in Jodi's murder.

***The Scheme to Coerce a Confession***

47. From the beginning, Jodi's murder was a high-profile case in a small, tight-knit community, placing significant pressure on the Individual Defendants to find Jodi's killer.

48. But, by at least July 2011, the Individual Defendants recognized that the continued interrogation of Mr. McCann would not lead to a confession.

49. As a result, the Individual Defendants developed a scheme to force a false confession out of Mr. McCann, even though DNA evidence excluded Mr. McCann as the murderer.

50. Specifically, the Individual Defendants determined that they would manufacture perjury charges against Mr. McCann by having him testify under oath, falsely contend his testimony was not true, and then have him charged with perjury—which carried a life sentence.

51. The Individual Defendants believed that the pressure of the manufactured perjury charges would force Mr. McCann to confess to the murder.

52. The Individual Defendants' motivations were well known and undermined the credibility of their entire investigation.

53. With the assistance of Defendant Donker, Defendants Fuller, Criger, and Bedell carried out their corrupt scheme.

54. Specifically, the Individual Defendants arranged to have Mr. McCann testify under oath pursuant to an investigative subpoena regarding his conduct on the night of Jodi's murder.

55. On September 18, 2012, Mr. McCann testified under oath pursuant to the investigative subpoena.

56. During the investigative subpoena proceeding, a St. Joseph County prosecutor asked Mr. McCann about his whereabouts during the search, including Mr. McCann's previous statement to the Individual Defendants and other investigators that he had travelled to the entrance of the Tumble Dam path in Constantine in order to meet with Defendant Donker.

57. Unbeknownst to Mr. McCann, prior to the investigative subpoena proceeding, the Individual Defendants had falsely informed the prosecutor that they had video of the Tumble Dam path entrance on November 8, 2007 that showed Mr. McCann had not traveled there.

58. As a result, the prosecutor confronted Mr. McCann during the proceeding and contended that video footage established that Mr. McCann was not at the entrance of the Tumble Dam path during the relevant times. But there was, in fact, no such video footage, and Mr. McCann's testimony regarding his whereabouts was entirely truthful.

59. Indeed, Mr. McCann testified truthfully in response to all of the prosecutor's questions.

**The Perjury Charges**

60. After Mr. McCann's truthful investigative subpoena testimony, Defendant Fuller prepared a false probable cause affidavit in support of perjury charges against Mr. McCann.

61. Much of the information in the false affidavit was based on information provided by Defendant Donker that the other Individual Defendants knew to be false.

62. Nevertheless, on information and belief, Defendant Donker agreed that he would support the false statements in the affidavit, and he ultimately did.

63. Other information in the false affidavit was based on false reports that the Individual Defendants prepared that did not accurately document their interviews with witnesses or other investigative tasks.

64. Specifically, in his affidavit, Defendant Fuller falsely averred that there were differences between Mr. McCann's testimony during the investigative subpoena proceeding and statements made by others during the course of the homicide investigation. Defendant Fuller knew that these "differences" were fabricated.

65. Based on Defendant Fuller's false affidavit, on or about April 17, 2014, over a year and a half after Mr. McCann testified pursuant to the investigative subpoena, Mr. McCann was charged with one count of perjury and arrested.

66. Based on Defendant Fuller's false affidavit, on or about July 17, 2014, the State filed an amended felony complaint, charging Mr. McCann with five counts of perjury.

67. Each perjury charge carried a maximum sentence of life in prison.

68. Mr. McCann was detained pending trial.

69. After ten months of pretrial detention and facing up to five life sentences, the years of pressure, intimidation, and coercion finally had their intended effect: Mr. McCann agreed to plead *nolo contendere* to one count of perjury.

70. Mr. McCann's plea did not require him to admit guilt.

71. The count to which Mr. McCann entered his plea was based on false information provided by the Individual Defendants regarding Mr. McCann's whereabouts on the evening of November 8, 2007, including the false information in Defendant Fuller's probable cause affidavit and the false information the Individual Defendants provided to the prosecutor in connection with the investigative subpoena proceeding.

72. At the time of Mr. McCann's plea, he knew he would face a potential 20-month sentence—approximately ten months of which he already had served in pretrial detention—which was far less than the potential life sentence he faced if found guilty.

73. On March 20, 2015, the Court sentenced Mr. McCann to serve a sentence of 20 months to 20 years in the Michigan Department of Corrections.

*Furlong Strikes Again*

74. In August 2015, just five months after Mr. McCann's sentencing hearing, Daniel Furlong lured 10-year-old Mackenzie Stafford into his garage. Unlike Jodi, Mackenzie was able to fight Furlong off and get away. After the attack, police began looking at Furlong for Jodi's murder. Police ultimately matched Furlong's DNA to two DNA samples found on Jodi's clothing.

75. On October 18, 2015, Furlong confessed to killing Jodi. In his confession, Furlong stated he had never met Mr. McCann and confirmed that Mr. McCann had nothing to do with Jodi's death. Furlong ultimately pleaded guilty to killing Jodi.

76. Furlong's confession established that Mr. McCann had no reason to lie about his involvement in Jodi's search and investigation.

*Mr. McCann's Motion for Relief from Judgment*

77. On June 29, 2017, Mr. McCann filed a motion for relief from judgment, contending, among other things, that newly discovered evidence demonstrated that he was actually innocent of perjury.

78. On December 6, 2017, the St. Joseph County Prosecutor's Office took the extraordinary step of stipulating to vacate Mr. McCann's conviction and dismiss with prejudice all charges against him.

79. The stipulation described in the preceding paragraph was a tacit acknowledgment that the Individual Defendants had no interest in whether Mr. McCann committed perjury and pursued him only because they could not gather the evidence necessary to charge him with Jodi's murder.

80. On December 7, 2017, the St. Joseph County Circuit Court entered an order vacating the conviction and dismissing the charges against McCann with prejudice.

81. In total, Mr. McCann spent one year and nine months wrongfully imprisoned for a crime he did not commit.

*Mr. McCann's Wrongful Imprisonment Compensation Act Claim*

82. On September 27, 2018, Mr. McCann petitioned for relief under the Michigan Wrongful Imprisonment Compensation Act based on the wrongful imprisonment that resulted from the Individual Defendants' conduct as alleged herein.

83. On May 16, 2019, the State of Michigan stipulated to the entry of judgment.

84. On June 25, 2019, the Michigan Court of Claims entered a stipulated order of judgment in favor of Mr. McCann on his Wrongful Imprisonment Compensation Act claim.

*Mr. McCann's Damages*

85. Mr. McCann has suffered tremendously because of the Individual Defendants' misconduct.

86. Mr. McCann spent nearly two years in prison for a crime he did not commit. He was released from prison to broken family ties, severe reputational harm, and ostracization. He is now attempting, with great difficulty, to rebuild his life.

87. Additionally, the emotional pain and suffering caused by losing nearly two years in the prime of his life has been substantial. During his wrongful incarceration, Mr. McCann was

stripped of the various pleasures of basic human experience, which all free people enjoy as a matter of right. He missed out on the ability to raise his son and share holidays, birthdays, and other life events with his tight-knit family and friends, and on the fundamental freedom to live one's life as an autonomous human being.

88. Mr. McCann's years of being wrongfully targeted and wrongfully incarcerated forced him into a world of isolation in which he lost all contact with his friends and family in the outside world. Because of the Individual Defendants' misconduct, he has been unable to repair many of those lost relationships. Due to his damaged reputation, he cannot return to his hometown of Constantine and has been forced to start a new life alone in a new town.

### COUNT I—42 U.S.C. § 1983
### Malicious Prosecution

89. Mr. McCann incorporates each paragraph of this Complaint as if fully restated here.

90. In the manner described more fully above, the Individual Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Mr. McCann of his constitutional rights.

91. The Individual Defendants accused Mr. McCann of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment.

92. The Individual Defendants caused Mr. McCann to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

93. Statements of Defendants regarding Mr. McCann's alleged culpability were made with knowledge that those statements were unreliable, false, and perjured. The Individual Defendants were aware that, as described more fully above, no true or reliable evidence implicated Mr. McCann in perjury, and all inculpatory evidence was coerced or fabricated. Furthermore, the Individual Defendants intentionally withheld from and misrepresented to prosecutors facts that further vitiated probable cause against Mr. McCann, as set forth above, and failed to investigate evidence that would have led to the actual perpetrator. The Individual Defendants withheld the facts of their manipulation and the resulting fabrications from Mr. McCann.

94. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

95. The charges against Mr. McCann were terminated in his favor.

96. As a direct and proximate result of this misconduct, Mr. McCann sustained, and continues to sustain, injuries as set forth above, including pain and suffering.

### COUNT II—42 U.S.C. § 1983
### Due Process

97. Mr. McCann incorporates each paragraph of this Complaint as if fully restated here.

98. As described more fully above, the Individual Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Mr. McCann of his constitutional right to fair criminal proceedings by, among other things, fabricating evidence of perjury, including without limitation, creating false police reports, fabricated statements, and fabricated testimony.

99. In the manner described more fully above, the Individual Defendants obtained Mr. McCann's conviction through their deprivation of Mr. McCann's constitutional right to a fair criminal proceeding, including through their use of fabricated evidence.

100. Absent the Individual Defendants' violations of Mr. McCann's constitutional right to a fair criminal proceeding, including their use of fabricated evidence, the prosecution of Mr. McCann could not and would not have been pursued.

101. The Individual Defendants' misconduct resulted directly in the unjust criminal conviction of Mr. McCann.

## COUNT III—42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

102. Mr. McCann incorporates each paragraph of this Complaint as if fully restated here.

103. After Jodi Parrack's murder, the Individual Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Mr. McCann of his constitutional rights, including his rights to due process, all as described in the various paragraphs of this Complaint.

104. In this manner, the Individual Defendants, acting in concert with other unknown coconspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

105. In furtherance of the conspiracy, each of the coconspirators engaged in and facilitated overt acts, including but not limited to those set forth above—such as fabricating evidence and committing perjury during hearing and trials—and was an otherwise willful participant in joint activity.

106.     As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Mr. McCann's rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

107.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Mr. McCann's clearly established constitutional rights.

## COUNT IV—State Law Claim
## Malicious Prosecution

108.     Mr. McCann incorporates each paragraph of this Complaint as if fully restated here.

109.     In the manner described more fully above, the Individual Defendants individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, caused a criminal proceeding against Mr. McCann to be commenced or continued.

110.     The Individual Defendants accused Mr. McCann of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings without any probable cause for doing so.

111.     The Individual Defendants caused Mr. McCann to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

112.     Statements of the Individual Defendants regarding Mr. McCann's alleged culpability were made with knowledge that those statements were false and perjured. The

Individual Defendants were aware that, as described more fully above, no true or reliable evidence implicated Mr. McCann in perjury, and all inculpatory evidence was coerced or fabricated. Furthermore, the Individual Defendants intentionally withheld from and misrepresented to prosecutors facts that further vitiated probable cause against Mr. McCann, as set forth above, and failed to investigate evidence that would have led to the actual perpetrator. The Individual Defendants withheld the facts of their manipulation and the resulting fabrications from Mr. McCann.

113. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

114. The charges against Mr. McCann were terminated in his favor.

115. As a direct and proximate result of this misconduct, Mr. McCann sustained, and continues to sustain, injuries as set forth above, including pain and suffering.

## COUNT V—State Law Claim
## Civil Conspiracy

116. Each paragraph of this Complaint is incorporated as if restated fully herein.

117. As described more fully in the preceding paragraphs, the Individual Defendants, acting in concert with other known and unknown coconspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

118. In furtherance of the conspiracy, the Individual Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Mr. McCann.

119. The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

120. As a direct and proximate result of the Individual Defendants' conspiracy, Mr. McCann suffered damages, including severe emotional distress and anguish, as is alleged more fully above.

### COUNT VI—State Law Claim
### Respondeat Superior—Village of Constantine

121. Each paragraph of this Complaint is incorporated as if restated fully herein.

122. In committing the acts alleged in the preceding paragraphs, Defendant Donker was a member of, and agent of, the Constantine Police Department, acting at all relevant times within the scope of his employment and under color of law.

123. Defendant Village of Constantine is liable as principal for all torts committed by its agents.

### COUNT VII—State Law Claim
### Respondeat Superior—St. Joseph County

124. In committing the acts alleged in the preceding paragraphs, Defendant Palmer was a member of, and agent of, the St. Joseph County Sheriff's Department, acting at all relevant times within the scope of his employment and under color of law.

125. Defendant St. Joseph County Sheriff's Department is liable as principal for all torts committed by its agents.

### COUNT VIII—State Law Claim
### Indemnification

126. Each paragraph of this Complaint is incorporated as if restated fully herein.

127. Michigan law provides that public entities can be directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

128. Defendants Fuller and Criger are or were employees of the Michigan State Police, who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff RAYMOND E. MCCANN II, respectfully requests that this Court enter a judgment in his favor and against Defendants, BRYAN FULLER, special representative for JAMES BEDELL, deceased; MARCUS DONKER; LONNIE PALMER; MICHAEL SHANE CRIGER; VILLAGE OF CONSTANTINE; ST. JOSEPH COUNTY; STATE OF MICHIGAN; and as-yet UNKNOWN OFFICERS OF THE MICHIGAN STATE POLICE, awarding compensatory damages, attorneys' fees and costs against each Defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the Individual Defendants, and any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, RAYMOND E. MCCANN II, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: December 6, 2019

Respectfully submitted,

/s/ Katie Roche
Katie Roche
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
katie@loevy.com

Scott R. Drury (IL # 6255867) (drury@loevy.com)
Frank Newell (IL # 6290332) (frank@loevy.com)
Rachel Brady (IL # 6312402) (brady@loevy.com)
*Pro hac vice applications* forthcoming
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900