UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RAYMOND E. MCCANN, II,

    Plaintiff

v

BRYAN FULLER; Special Representative for the ESTATE of JAMES BEDELL; MARCUS DONKER; MICHAEL SHANE CRIGER; VILLAGE OF CONSTANTINE; and as-yet UNKNOWN OFFICERS OF THE MICHIGAN STATE POLICE, CONSTANTINE POLICE DEPARTMENT;

    Defendants.

No. 1:19-cv-1032

HON. PAUL L. MALONEY

MAG. JUDGE PHILLIP J. GREEN

| | |
|---|---|
| Rachel Brady (IL#6312402)<br>Scott R. Drury (IL#6255867)<br>Frank Newell (IL#6290332)<br>Attorneys for Plaintiff<br>Loevy & Loevy<br>311 N. Aberdeen Street, 3rd Floor<br>Chicago, Illinois 60607<br>(312) 243-4900<br>drury@loevy.com<br>frank@loevy.com<br>brady@loevy.com | Eric M. Jamison (P75721)<br>Attorney for MSP Defendants Fuller and Criger<br>Michigan Department of Attorney General<br>State Operations Division<br>P.O. Box 30754<br>Lansing, MI 48909<br>(517) 335-7573<br>jamisone@michigan.gov<br>G. Gus Morris (P32960)<br>McGraw Morris P.C.<br>Attorneys for Defs Village of Constantine, and Donker and Bedell Estate<br>2075 W. Big Beaver Rd., Ste. 750<br>Troy, MI 48084<br>(248) 502-4000<br>gmorris@mcgrawmorris.com |

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LESLIE FISHER,

          Plaintiff,                           Case No. 1:17-cv-12504

v.                                                 Honorable Thomas L. Ludington
                                                  United States District Judge
RANDALL JORDAN, MATTHEW RICE, and
JOHN TRAFELET,

          Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFEDANTS' MOTION FOR SUMMARY JUDGMENT**

In April 2016, a multijurisdictional law-enforcement taskforce executed a valid search warrant at Leslie Fisher's house, detached garage, and workshop. Altogether, the officers found Leslie, her husband, a marijuana grow room, a THC-extraction lab, jewelry, body armor, an unregistered Baretta, five other firearms, more than 32 pounds of marijuana, 67 cannabis plants, and thousands of dollars' worth of equipment used to grow and to extract THC from marijuana.

Leslie's husband told the police that Leslie did not help him with his grow operation and seldomly entered the garage, which had the same access code as their house and workshop. Leslie denied knowing the extent of the operation and proffered their medical-marijuana cards, which permitted possession of 24 plants and 5 ounces. She added that the marijuana in the house is her personal smoke stash and came from the garage. The Fishers were arrested for, among other things, possession with intent to deliver marijuana. The county circuit court dismissed Leslie's charges.

In August 2017, she sued the officers, arguing they arrested her without probable cause. Both sides filed motions for summary judgment. The primary question presented is whether the officers had probable cause to arrest Leslie Fisher.

I.

A.

In early March 2016, Plaintiff Leslie Fisher's neighbor tipped off the Michigan State Police (MSP) that Plaintiff's husband was growing marijuana in their garage and manufacturing THC wax in a workshop a block from their house. ECF No. 61-3 at PageID.698 (describing the wax "as approximately seven flat, pizza sized brownish colored substances that 'Looked like peanut butter brittle without peanuts.'"). Defendant Randall Jordan[1] met with the tipster twice in 2016: once between March 8 and 15, and once a few days later. ECF Nos. 61-10 at PageID.777–79; 61-11 at PageID.808. For the first meetup, Detectives Riley Olson[2] and Thomas Brown[3] attended. ECF No. 61-11 at PageID.804. Officer Jason Powell[4] attended but remained in the car. ECF No. 64-3 at PageID.928. During the second rendezvous, the tipster shared the location of the grow operation with Olson, Brown, and Jordan. *See* ECF Nos. 61-11 at PageID.807; 64 at PageID.881–82. Jordan later corroborated the tipster's information. ECF Nos. 61-4 at PageID.703–04; 61-11 at PageID.805–06.

Based on trash pulls, drive-bys, real-estate records, and the meetings with the tipster, Jordan completed an affidavit for a search warrant for the Fishers' house, garage, and "work shop." ECF No. 64-7 at PageID.959–62. The affidavit was reviewed by Defendant Matthew Rice,[5] ECF Nos. 61-10 at PageID.775; 64-5 at PageID.944, reviewed and signed by Isabella County Assistant

---

[1] Michigan State Police Trooper Randall Jordan joined BAYANET in May 2015. ECF No. 61-11 at PageID.801–02.
[2] Detective Riley Olson is a detective for the Central Michigan University Police Department. ECF No. 24 at PageID. 144.
[3] Detective Thomas Brown is a Michigan State Police detective. ECF No. 38 at PageID.374.
[4] Officer Jason Powell is a detective sergeant with the Mount Pleasant Police Department. ECF No. 61-13 at PageID.843. He joined BAYANET in October 2015. *Id.* at PageID.843–44.
[5] Lieutenant Matthew Rice was the leader of the BAYANET North Team. ECF No. 61-10 at PageID.775.

Prosecutor Mark Kowalczyk, and signed by Magistrate Judge Matt Hagen, ECF Nos. 61-5 at PageID.707; 64-7 at PageID.962. Jordan's affidavit stated he "received anonymous tips [over several months] stating the resident(s) . . . were growing and possibly selling marijuana." ECF No. 61-3 at PageID.698. Plaintiff contests the accuracy of that statement.

On April 12, 2016, Jordan obtained a search warrant for the Fishers' house, garage, and workshop. ECF No. 61-5 at PageID.710. The warrant was reviewed by Kowalczyk and signed by Judge Hagan. *Id.* at PageID.707.

### B.

Defendants and other BAYANET[6] officers executed the search warrant at Plaintiff's house. *Id.* at PageID.708. On arrival, Defendant John Trafelet[7] knocked and announced the officers' presence. ECF No. 61-12 at PageID.834. Rice saw curtains moving, so he thought Plaintiff and her husband were inside. *Id.* In her bedroom upstairs, Plaintiff heard the knocking. ECF No. 61-9 at PageID.745. So did her husband, who went upstairs to put on pants. *Id*.

Because no one answered the door, Trafelet ordered forced entry. ECF No. 61-12 at PageID.834. Powell immediately rammed the door open, ECF No. 61-13 at PageID.844, and Plaintiff's husband rushed downstairs (with pants on), ECF No. 61-9 at PageID.745. He saw the door forcibly opened from the dining room, *id.* at PageID.745, 750, where officers handcuffed him and then sat him at the dining-room table, ECF Nos. 61-5 at PageID.708; 61-9 at PageID.750.

Meanwhile, Jordan went upstairs, gun drawn but pointed to the ground, and found Plaintiff applying makeup for work. ECF No. 61-9 at PageID.747. He asked her to approach, and she did,

---

[6] "[T]he Bay Area Narcotics Enforcement Team ('BAYANET')[ is] a multijurisdictional taskforce overseen by the Michigan State Police." *Murphy v. May*, No. 1:21-CV-12089, 2022 WL 275502, at *1 (E.D. Mich. Jan. 28, 2022).
[7] During the execution of the search warrant, Michigan State Police Detective John Trafelet was the Assistant Team Leader of the BAYANET North Team. ECF No. 60 at PageID.632–33.

hands raised. *Id.* Jordan holstered his gun then escorted Plaintiff to the stairway, gripping her left arm with one hand. *Id.* at PageID.748–49. Jordan released her into the stairway then followed her downstairs. *Id.* at PageID.747–50. Once downstairs, Jordan handcuffed Plaintiff, hands front, then sat her at the dining-room table with her husband. *See id.* at PageID.750–52.

With the couple cuffed, Powell led the search. ECF No. 60 at PageID.621. In the garage, officers found 11,590 grams (~25.6 pounds) of marijuana, 67 marijuana plants, 26 plastic bags, 19 light bulbs, 12 lamps, 10 amps, 5 drying racks, 3 "lighting controls," 2 canister filters, plastic bags, a grinder, a humidifier, and a digital scale. ECF No. 61-5 at PageID.708–09.

In Plaintiff's bedroom, a K-9 flagged a minifridge and a bedside nightstand. ECF No. 61-8 at PageID.740. From that nightstand Powell seized 19.5 grams of marijuana, then 7.5 grams of THC wax inside the fridge, an unregistered Beretta handgun atop another nightstand, and 2.9 more grams of marijuana in the room. *See* ECF Nos. 60 at PageID.620; 61-5 at PageID.708–09. Then Powell searched the downstairs computer room where he located 29.2 grams of marijuana seeds, two shotguns, two rifles, body armor, and a Glock registered to Plaintiff's husband. ECF Nos. 60 at PageID.621–23; 61-5 at PageID.708–09. Powell brought it all to Trafelet, *see* ECF No. 60 at PageID.621, who was downstairs cataloguing all the evidence, ECF No. 61-12 at PageID.832, 836–37. Trafelet also received evidence from Jordan, ECF No. 61-11 at PageID.820–21, who went to the dining room, joined by Rice from outside, ECF No. 61-10 at PageID.787–89.

Officers concurrently searched the Fishers' workshop a block away, where they located more than six pounds of marijuana and paraphernalia used to grow it or to convert it to wax. ECF No. 61-6 at PageID.725–26. There, the officers "found [the] pizza boxes filled with the peanut-brittle-like material that the tipster described." ECF No. 61 at PageID.678.

While other officers searched the house, Jordan and Rice questioned Plaintiff's husband. ECF No. 61-5 at PageID.709–11. After being read his *Miranda* rights, Plaintiff's husband agreed to talk. *Id.* at PageID.709. Rice testified Plaintiff's husband said that he was saving the "overages" to sell to dispensaries but could not find a buyer, *id.*, and that Plaintiff "had nothing to do with the grow operation or the shop operation," ECF No. 61-10 at PageID.795. Plaintiff's husband then confirmed that the access codes of the house, garage, and workshop were the same. *Id.* at PageID.796. Jordan testified that Plaintiff's husband said she "did not know the extent of his marijuana grow operation because she seldomly went into his garage." ECF No. 61-5 at PageID.711. Rice later testified to the same facts, adding that he "did not learn from any source that [Plaintiff] had been in the garage between the time [her husband] started his grow operation and the time she was arrested." ECF No. 64-5 at PageID.950. And Rice testified that he was not aware of any evidence suggesting Plaintiff entered the workshop. *Id* at PageID.951. Plaintiff's husband also said he and Plaintiff could each legally possess 2.5 ounces of marijuana and 12 plants (collectively 5 ounces and 24 plants) with their "Michigan Medical Marijuana Cards," ECF No. 61-5 at PageID.710, which were then validated by "Isabella County Central Dispatch" at the scene, *id.* at PageID.711.

After sitting in the dining room for an hour, Plaintiff was questioned by Jordan and Rice in a downstairs bedroom. ECF No. 61-9 at PageID.755–56, 758. First, Rice read Plaintiff her *Miranda* rights from a form, which she said she understood but would not sign. ECF No. 61-5 at PageID.711. Then Plaintiff denied "go[ing] into the garage," knowing "how much" marijuana was in it, and knowing what her husband "does at his shop." *Id.* Plaintiff ended the interview after being accused of illegitimately funding her lifestyle and responding that she has "earned everything [she] got." *Id.* at PageID.758. Jordan and Rice then returned Plaintiff to the dining

room, *id.* at PageID.760, where she waited with her husband until 2:00 PM, when they were taken to jail, *id.* at PageID.754.

Jordan testified that he alone chose to arrest Plaintiff because:

(1) her husband said that, though "seldomly," she accessed their garage,
(2) which he added has "the same key code" as their house,
(3) and "her medical marijuana card" permitted her to use marijuana,
(4) which she said came from the garage,
(5) which is where the officers found the illegal grow operation.

*See* ECF No. 61-11 at PageID. 817–18, 825.

While the house was searched, officers also searched the workshop, where they found a "THC extraction lab" housing 2,834 grams of marijuana and some lamps, pumps, and other paraphernalia. *See* ECF Nos. 60 at PageID.614; 61-5 at PageID.710; 61-6 at PageID.725.

**C.**

The next day, with Jordan as the "Complaining Witness," Isabella County Prosecutor found probable cause to charge Plaintiff with:

(1) possession with intent to deliver 5–45 kilograms of processed marijuana, MICH. COMP. LAWS § 333.7401(2)(d)(ii);
(2) possession with intent to deliver 20–200 marijuana plants, MICH. COMP. LAWS § 333.7401(2)(d)(ii);
(3) felony firearm, MICH. COMP. LAWS § 750.227b(1); and
(4) knowingly or intentionally maintaining a drug house, MICH. COMP. LAWS §§ 333.7405(1)(d), 333.7406.

ECF No. 61-15 at PageID.846–47. The district judge found probable cause and bound over Plaintiff to the circuit court.[8] The circuit judge[9] dismissed the charges for lack of probable cause, ECF No. 60 at PageID.613–18, which Isabella County did not appeal, ECF No. 61 at PageID.674.

---

[8] The docket from the Isabella County District Court and Isabella County Circuit Court for Plaintiff's criminal case are unavailable to this Court, except for the pleadings that the Parties provided in this case. The Parties have not provided any part of the district-court decision.
[9] Judge Chamberlain was the Chief Judge of the Twenty First Circuit Court of Isabella County.

The Michigan Court of Appeals later reversed and remanded the dismissal of the charges against Plaintiff's husband, ECF No. 61-15 at PageID.860–62, because his "past attempt to sell marijuana raise[d] a fact question about [hi]s claimed medical use of all of the marijuana in his possession at the time of the raid," ECF No. 61-7 at PageID.735, 737; *accord People v. Fisher*, No. 336902, 2018 WL 1437436 (Mich. Ct. App. Mar. 22, 2018) (per curiam), *appeal denied*, 934 N.W.2d 267 (Mich. 2019) (Mem.).

### D.

Plaintiff brought this lawsuit in August 2017. *See* ECF No. 1. She has since voluntarily dismissed many of her claims. *See* ECF Nos. 38; 56; 64 PageID.869. Five claims remain:

(1) Count II: Arrest Without Probable Cause under 42 U.S.C. § 1983 against Jordan, Rice, and Trafelet;
(2) Count III: Prosecution Without Probable Cause under 42 U.S.C. § 1983 against Jordan and Rice;
(3) Count IV: False Arrest under Michigan law against Jordan, Rice, and Trafelet;
(4) Count IV: False Imprisonment under Michigan law against Jordan, Rice, and Trafelet; and
(5) Count V: Malicious Prosecution under Michigan law against Jordan and Rice.

ECF No. 38 at PageID.387–93.

Defendants seek summary judgment on all five claims. ECF No. 61. Plaintiff filed a cross-motion on Count II. ECF No. 60.

### II.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986) (citation omitted). A genuine issue of fact requires more than "a mere scintilla of evidence," *id.* at 251, more than "some metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018); *see also* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 35–36 (2022) (suggesting that courts should only draw "reasonable" inferences).

Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). "The standard is the same [if] 'the parties present cross-motions.'" *MRP Props. v. United States*, 583 F. Supp. 3d 981, 990 (E.D. Mich. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### III.

The first claim that will be analyzed is Count II: Arrest Without Probable Cause.

### A.

In order to overcome the presumption of qualified immunity asserted by Defendants, Plaintiff must demonstrate that "(1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016).

When Plaintiff was arrested, it was clearly established that arrest without probable cause violates the Fourth Amendment. *Rieves v. Town of Smyrna*, 959 F.3d 678, 696 (6th Cir. 2020); *see also Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 584 (6th Cir. 2003); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001); *Niewolak v. Bartynsky*, No. 2:19-CV-13386, 2022 WL 2820088, at *6 (E.D. Mich. July 19, 2022) (collecting cases).

So the only remaining issue is whether each Defendant violated Plaintiff's clearly established right to be free from arrest without probable cause.

### B.

### 1.

To rebut Defendants' entitlement to qualified immunity from her unlawful-arrest claim, Plaintiff must demonstrate Defendants were involved in her arrest and, based on the totality of the circumstances known at that time, lacked a reasonable belief of probable cause that she had been or was committing a crime. *Ouza*, 969 F.3d at 279 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *accord Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citation omitted); *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("The facts must be particularized to the arrestee."); *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (holding that each defendant must have "*personally*" violated the arrestee's rights).

Thus, for qualified immunity, Defendants must have reasonably believed they had probable cause to arrest Plaintiff for one or more of the following offenses[10]:

> (1) possession with intent to deliver 5–45 kilograms of processed marijuana. MICH. COMP. LAWS § 333.7401(2)(d)(ii).

---

[10] The felony-firearm charge required probable cause of an underlying felony and, thus, could not independently establish probable cause unless the officers were aware of the prior conviction. *See* MICH. COMP. LAWS § 750.227b(1). Defendants have not made that argument, and it is unlikely.

(2) possession with intent to deliver 20–200 marijuana plants. MICH. COMP. LAWS § 333.7401(2)(d)(ii).
(3) knowingly or intentionally maintaining a drug house. MICH. COMP. LAWS §§ 333.7405(1)(d), 333.7406.

ECF No. 61-15 at PageID.846–47.

Police officers have probable cause only if, at the time of arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *accord Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (holding that an officer has probable cause "only when he discovers reasonably reliable information" that a person has committed or is committing a crime). When establishing probable cause, "[p]olice officers are permitted 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008) (quoting *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002)); *see also Illinois v. Gates*, 462 U.S. 213, 231 (1983) ("In dealing with probable cause, . . . we deal with probabilities." (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949))).

**2.**

More than a reasonable belief, Defendants had *actual* probable cause to arrest Plaintiff for possession with intent to deliver marijuana.

Under Michigan law, the elements of possession with intent to deliver marijuana are:

(1) Possession of Substance: knowingly and intentionally possess marijuana.
(2) Intent to Deliver Substance: intend to deliver or to sell the marijuana to others.

- 10 -

*See People v. Crawford*, 582 N.W.2d 785, 792 (Mich. 1998); *see also People v. Mass*, 628 N.W.2d 540, 551 n.21 (Mich. 2001) ("[P]ossession with intent to deliver is a specific-intent crime." (citing *Crawford*, 582 N.W.2d at 804 n.19 (Boyle, J., dissenting))).

Plaintiff at least constructively possessed the illegal quantity of marijuana in her garage based on reasonable inferences drawn from circumstantial evidence that she had "knowledge of its presence, knowledge of its character, and the right to control it." *People v. Brown*, 755 N.W.2d 664, 680 (Mich. Ct. App. 2008) (citations omitted); *see also Mass*, 628 N.W.2d at 548 ("[K]nowledge of the amount of a controlled substance is not an element of a delivery charge.").

There is no dispute that Plaintiff knew marijuana was growing in her garage, because she said she smoked it. *See* ECF No. 60 at PageID.542 ("Plaintiff admitted that she was aware [her husband] was growing some marijuana in the garage for their mutual medical needs."); *see also* ECF No. 61-9 at PageID.767–68 (acknowledging that her house contained marijuana "flowers," "lotion," "wax," "oil," "roaches," a smoking "bowl," "jars of marijuana," "marijuana edibles," "marijuana product" that came from "[t]he shop"). The Michigan Court of Appeals found the same to be true. *See People v. Fisher*, No. 336902, 2018 WL 1437436, at *3 n.2 (Mich. Ct. App. Mar. 22, 2018) (per curiam) ("Defendant began growing his own plants to produce marijuana for his and Leslie's medical needs . . . ."). And her husband testified that "he produced the ingestible forms of marijuana he and Leslie used." *Id.* at *5.

The next issue is whether she had the right to control it. Plaintiff and her husband had "exclusive control or dominion over [the] property on which contraband [marijuana was] found": the garage. *See Brown*, 755 N.W.2d at 680 (citing *People v. Wolfe*, 489 N.W.2d 748, 754 (Mich. 1992)); *see also Wolfe*, 489 N.W.2d at 753 ("[P]ossession may be joint, with more than one person actually or constructively possessing a controlled substance." (citations omitted)). There is no

dispute that her garage, workshop, and house were locked by keypads that required the same code. ECF Nos. 61-10 at PageID.796; 61-11 at PageID.818. And Plaintiff testified to knowing knew the code for her house. ECF No. 61-9 at PageID.744. So it was reasonable for the officers to infer that Plaintiff had exclusive control or dominion over her garage. *See Wolfe*, 489 N.W.2d at 754 (holding that a person having "the only key to the apartment" is sufficient for a "rational jury" to find "control over the premises"); *People v. Konrad*, 536 N.W.2d 517, 521 (Mich. 1995) (explaining that defendants have constructive possession of drugs if they have "the right (not the legal right, but the recognized authority in [their] criminal milieu) to possess them" (quoting *United States v. Manzella*, 791 F.2d 1263, 1266 (7th Cir. 1986))); *accord People v. McGhee*, 709 N.W.2d 595, 613 (Mich. Ct. App. 2005) ("[T]he owner of a safe deposit box has legal possession of the contents even though the bank has actual custody." (quoting *Konrad*, 536 N.W.2d at 521)); *People v. Williams*, 707 N.W.2d 624, 628 (Mich. Ct. App. 2005) (finding "a sufficient nexus . . . to conclude that defendant had constructive possession of [marijuana] when he admitted that he knew of its presence and that his money had gone toward its purchase"). Accordingly, Plaintiff constructively possessed the marijuana in her garage.

Although that circumstantial evidence was sufficient to find probable cause of possession, it is bolstered by Plaintiff being "an inhabitant, not a mere visitor," and being found "near" the . . . narcotics and narcotics paraphernalia." *People v. Mumford*, 230 N.W.2d 395, 397 (Mich. Ct. App. 1975). She was found in her bedroom with a refrigerator containing packaged marijuana that she said came from her garage, which "permitted an inference that the marijuana from the grow operation had been processed in the home." *People v. Mendoza*, No. 328109, 2017 WL 242741, at *11 (Mich. Ct. App. Jan. 19, 2017) (per curiam). There was also marijuana in plain view in her bedroom, which she said came from her garage and permitted the same inference. And the body

- 12 -

armor, jewelry, and firearms found unsecured in Plaintiff's house permitted the officers' reasonable inference that Plaintiff knew the amount of the marijuana was illegal. *See Mumford*, 230 N.W.2d at 397. Another relevant consideration is if the "defendant was not authorized to possess the substance." *Wolfe*, 489 N.W.2d at 752 (citing *People v. Lewis*, 444 N.W.2d 194, 196 (Mich. Ct. App. 1989)). And there is no dispute that Plaintiff was not authorized to possess the quantity of marijuana found in the garage, which she acknowledged at the scene when she presented her medical-marijuana card to justify the amount that was in the house.

In sum, drawing all reasonable inferences in Plaintiff's favor, no reasonable juror could find a lack of probable cause that Plaintiff constructively possessed the marijuana in the garage. True, Plaintiff was not found inside the garage, but she "had the right to exercise control over the drugs and . . . knew they were present." *People v. Davis*, No. 321762, 2015 WL 4546620, at *7 (Mich. Ct. App. July 28, 2015) (per curiam) (citing *People v. Germaine*, 208 N.W. 705, 706 (Mich. 1926) (en banc)). Plaintiff's husband told the officers that he sold his business to grow marijuana, and that he tried to sell the marijuana to local dispensaries. Then Plaintiff told the officers that her personal marijuana came from her garage. And she had full access to it. Thus, it is reasonable to infer that Plaintiff's husband told her what he had grown or what he was trying to do with it. At best, she knew of a high probability that the marijuana in the garage exceeded the legal limit— even if she deliberately ignored it. *See United States v. Mitchell*, 681 F.3d. 867, 876 n.1 (6th Cir. 2012).

But Plaintiff's mere possession was not enough to arrest her; there must have also been evidence of her intent to deliver the marijuana.

Intent to deliver may be circumstantially inferred from amount and packaging. *People v. Todd*, No. 217633, 2000 WL 33519574, at *5 (Mich. Ct. App. 2000) (per curiam) ("[A]lmost four

ounces of marijuana, divided into different types of packages, was sufficient to support an intent to deliver." (citing *Wayne Cnty. Prosecutor v. Recorder's Ct. Judge*, 326 N.W.2d 825, 827 (Mich. Ct. App. 1982) (per curiam))). This is such a case.

Here, significant evidence supported the circumstantial inference that Plaintiff intended to distribute the illegal quantity of marijuana found in her garage and workshop. In the house alone, the officers found body armor, an unregistered handgun, 5 other firearms, and 59.1 grams of marijuana in three different forms: bud, wax, and seeds. In the garage, the officers found a digital scale, a humidifier, a grinder, 2 canister filters, 3 lighting controls, 5 drying racks, 10 amps, 12 lamps, 19 light bulbs, 26 plastic baggies, 67 marijuana plants, and 11,590 grams of marijuana—far exceeding the 24 plants and 5 ounces that the couple's medical-marijuana cards collectively permitted. In their workshop one block away, the officers found more than 6 pounds of marijuana and more paraphernalia for growing it or converting it to wax. Importantly, Plaintiff's husband *admitted that he tried to sell the marijuana*. Add all that to Plaintiff's constructive possession and the evidence supporting it, and no reasonable juror could find a lack of probable cause of Plaintiff's intent to deliver the marijuana. *See Wolfe*, 489 N.W.2d at 755 ("Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." (collecting cases)).

For those reasons, Defendants are entitled to qualified immunity against Count II.[11] *See Emanuel v. Cnty. of Wayne*, 652 F. App'x 417, 427 (6th Cir. 2016) ("A policeman, however, is

---

[11] Trafelet is also entitled to qualified immunity from Count II because he did not participate in Plaintiff's arrest. "Each defendant's liability must be assessed individually based on his own actions," *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010), so each defendant must have "personally" violated the plaintiff's rights, *see Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). True, he knocked and announced the officers' presence, ordered forced entry into the house, and searched one room for evidence before compiling the evidence all the officers collected. But he did not participate in the investigation,

- 14 -

under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988))). Consequently, Defendants' Motion for Summary Judgment will be granted on Count II, and Plaintiff's Motion for Summary Judgment will be denied.

## IV.

In Count III, Plaintiff alleges Jordan and Rice violated the Fourth Amendment by prosecuting her without probable cause, which requires:

(1) a criminal prosecution against the plaintiff that the defendant made, influenced, or participated in the decision to initiate;
(2) a lack of probable cause for the prosecution;
(3) that due to a legal proceeding, the plaintiff suffered a deprivation of a Fourth Amendment liberty apart from the initial seizure; and
(4) that the criminal proceeding resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Plaintiff was charged with four felonies on April 13, 2016. ECF No. 61-15 at PageID.846.

Plaintiff's right to be free from malicious prosecution was clearly established. *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) ("[T]he Sixth Circuit recognizes a 'constitutionally cognizable claim of malicious prosecution under the Fourth Amendment.'" (quoting *Sykes*, 625 F.3d at 308)).

But, as explained, probable cause existed to arrest and to prosecute Plaintiff. *See* discussion *supra* Section III.B.2. Therefore, Defendants are entitled to qualified immunity for Count III. Consequently, Defendants' Motion for Summary Judgment will be granted on Count III.

---

help get the warrant, or arrest or interrogate Plaintiff. At most, he saw Plaintiff when Jordan brought her downstairs. Simply put, Trafelet was only conducting a search—not making an arrest.

V.

In Count IV, Plaintiff alleges false arrest and false imprisonment under Michigan law.

A.

Defendants are entitled to governmental immunity from Count IV. This analysis is different from federal qualified immunity. Because Defendants had probable cause to arrest and to prosecute Plaintiff, they are entitled to governmental immunity from false arrest and false imprisonment under Michigan law. *See Odom v. Wayne Cnty.*, 760 N.W.2d 217, 229 (Mich. 2008) ("A police officer would be entitled to immunity . . . . if the arrest was legal." (citing *Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 894 n.2 (Mich. 1982))); discussion *supra* Section III.B.2.

Yet Plaintiff's claims for false arrest and false imprisonment also lack merit. Michigan false arrest requires that the "defendants 'participated in an illegal and unjustified arrest, and that [they] lacked probable cause to do so.'" *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (citing *Walsh v. Taylor*, 689 N.W.2d 506, 513 (Mich. Ct. App. 2004)). Michigan false imprisonment requires that the restraint occurred without probable cause to support it. *Id.* As explained, no reasonable juror could find a lack of probable cause to arrest or to prosecute Plaintiff. *See* discussion *supra* Section III.B.2. Therefore, Plaintiff's claims for false and false imprisonment lack merit. *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 363 (Mich. Ct. App. 2003) (per curiam) ("Accordingly, the false arrest or false imprisonment claims were properly dismissed under MCR 2.116(C)(10) because probable cause existed."). Consequently, Defendants' Motion for Summary Judgment will be granted on Count IV.

VI.

For Count V, Plaintiff has alleged a claim for malicious prosecution under Michigan law against Defendants Jordan and Rice, which requires in relevant part that they lacked probable cause

- 16 -

for bringing or maintaining the prosecution against Plaintiff, and that they did so with malice or a purpose other than bringing Plaintiff to justice. *Matthews v. BCBS of Mich.*, 572 N.W.2d 603, 609–10 (Mich. 1998) (citation omitted). Michigan is skeptical of such malicious-prosecution claims. *See Payton v. City of Detroit*, 536 N.W.2d 233, 242 (Mich. Ct. App. 1995) (citation omitted).

Defendants are entitled to governmental immunity from Plaintiff's malicious-prosecution claim because they had probable cause to arrest and to prosecute her. *See Odom*, 760 N.W.2d at 229; discussion *supra* Section III.B.2.

Even so, Plaintiff's malicious-prosecution claim lacks merit. "[T]he only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there would have been no probable cause." *King v. Arbic*, 406 N.W.2d 852, 858 (Mich. Ct. App. 1987) (per curiam) (quoting *Belt v. Ritter*, 171 N.W.2d 581, 586 (Mich. Ct. App. 1969)). So, the key question is, "[D]id [Jordan and Rice] fill out a fair incident report?" *King*, 406 N.W.2d at 859.

First, the semantic nuances in the search-warrant affidavit were not factually false. True, the warrant affidavit read "tips" and "resident(s)." But the rest of the paragraph explains that the only evidence particularized to Plaintiff was a piece of mail confirming that she lived with the suspect of the grow operation. *See* ECF No. 64-7 at PageID.960. And it explains that the "tips" came from one person: "[t]he anonymous tipster." *Id.* Therefore, Count V lacks merit.

Second, there was probable cause to issue the search warrant without those two words because all the independent evidence collected during Defendants' investigation corroborated "[t]he anonymous tipster." *See id.*; ECF No. 61 at PageID.678; *Simmons v. Telcom Credit Union*, 442 N.W.2d 739, 742 (Mich. Ct. App. 1989) (holding that a prosecution is not malicious if "the prosecutor instituted charges based on [an independent police] investigation . . . instead of the

information or statements supplied by the defendant" (citations omitted)). Although they did both, Defendants did not have to elaborate that the two "tips" came from one tipster or that the officers found probable cause for one of two residents of the same house; the warrant permitted a *search* Plaintiff's husband's house, not an arrest of Plaintiff. *King*, 406 N.W.2d at 859 ("[I]t would place too much of a burden upon investigating police officers to require that they include all possibly mitigating items in their police reports in order to avoid potential liability."); *Ringo v. Richardson*, 278 N.W.2d 717, 720 (Mich. Ct. App. 1979) (per curiam) ("Because the warrant was issued upon probable cause, the arrest of defendant was lawful."). In this way too, Count V lacks merit.

And there is no evidence that "the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (citing *Matthews v. BCBS of Mich.*, 572 N.W.2d 603, 609–10 (Mich. 1998)). For this third reason as well, Count V lacks merit.

For those reasons, Defendants' Motion for Summary Judgment will be granted.

## VI.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Liability on Count II, ECF No. 60, is **DENIED**.

Further, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 61, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Amended Complaint, ECF No. 38, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case**.

Dated: February 17, 2023    s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　United States District Judge